UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


GREG HARRIS                        )
                                   )
v.                                 )          NO. 2:07-CV-198
                                   )
HOWARD CARLTON, Warden             )


## MEMORANDUM OPINION

Pro se prisoner Greg Harris brings this petition for a writ of habeas

corpus under 28 U.S.C. § 2254, claiming that he is confined illegally pursuant to

several Sullivan County, Tennessee drug-related convictions. Now before the Court

are respondent's motion to dismiss and petitioner's motion to hold this case in

abeyance. [Docs. 7, 10]. Respondent has also filed a brief in support of his motion,

as well as the state court record. [Docs. 8, 9].

## I. Procedural Background

Petitioner, who proceeded pro se at the 2002 trial, was convicted of

conspiracy to sell or deliver more than 300 grams of cocaine, possession of more than

300 grams of cocaine for resale within 1,000 feet of a school, and two counts of

possession of drug paraphernalia. For these offenses, petitioner received two

consecutive twenty-five-year prison sentences (the cocaine convictions) and two

concurrent 11 month 29 day sentences (the drug paraphernalia convictions), for an

effective sentence of fifty years. Petitioner appealed, through appointed counsel, and the convictions were affirmed, but the consecutive sentences were modified to two concurrent twenty-four year terms. *State v. Harris*, No. E2003-02834-CCA-R3-CD, 2005 WL 419082 (Tenn. Crim. App. Feb. 23, 2005).

In 2006, petitioner filed a *pro se* application for post-conviction relief. The trial court held that the petition did not present a colorable claim and/or that the issues had been previously determined, refused to appoint counsel, and dismissed the petition. The dismissal was affirmed on appeal, *Harris v. State*, No. E2006-00406-CCA-R3-PC, 2006 WL 3613608 (Tenn. Crim. App. Dec. 12, 2006), and this petition followed on August 13, 2007.

## II. Factual Background

The following factual recounting is taken from the state appellate court's opinion on direct review. *See Harris*, 2005 WL 419082, at *1 - *4.

In the early morning hours of April 24, 2002, a law enforcement team went to an apartment in Kingsport, Tennessee, with a capias to arrest its occupant, Charles Miller. They also had a capias for petitioner, Mr. Miller's visitor. During the arrest, a police officer saw in the apartment's kitchen sink a Mason jar, which contained a white substance that he believed to be cocaine. Mr. Miller and petitioner were removed from the apartment, and the officers secured a search warrant based on

this observation, as well as information from a confidential informant. The search warrant was executed and cocaine and various pieces of drug paraphernalia were seized.

At petitioner's trial, one officer testified that he had arrived at the apartment, knocked and announced the officers' presence several times, and heard movement in the apartment. About one minute later, Mr. Miller opened the door, and he and petitioner were arrested and placed in handcuffs.

A second officer, a Tennessee Bureau of Investigation [TBI] agent, testified that his job involved narcotics investigations and that he had participated in petitioner's arrest. When he entered the apartment, he noticed a strong odor similar to that generated by "cooking cocaine." After the search warrant was produced, he searched the bedroom and found a portion of a "cookie" in the closet[1] and two bags of powdery white substance on the shelf. Other items uncovered in the search included cash, a third bag in a coat pocket, two small bags of what appeared to be crack cocaine in another coat pocket, a leather carrying bag, attached to which was an airport tag identifying it as Charles Miller's and inside of which was a Glock 17 handgun, two cellular telephones, and two airline boarding passes issued to Charles Miller, dated April 21, 2002, for flights from Dallas to Houston and from Houston

---

[1] A cookie, according to the agent's testimony, is used to describe the hard substance formed when powder cocaine is converted to crack cocaine.

3

to St. Louis. Laying on the stereo were two more cellular phones. According to the officer's testimony, these types of phones commonly were used by narcotics traffickers to conduct business. The officer acknowledged that he saw no drugs in the room where petitioner was sleeping on the couch and found no drugs during his search of petitioner's clothing.

Also testifying was a third officer, a vice-and-narcotics detective who had obtained the search warrant and who also had participated in the search. When he entered the apartment, he had smelled an odor which he too associated with cocaine. Upon searching the kitchen, he found two plastic bags with white powder inside, four tan rocks which he believed to be crack cocaine, scales capable of measuring to tenths of a gram, a box of Mason jars, $200 in cash, two receipts for money received by Mr. Miller from petitioner, and two airline ticket stubs in petitioner's name for flights on April 21, 2002, from Dallas to Houston and Houston to St. Louis. The flight numbers on the tickets matched those on Mr. Miller's boarding passes. The living room held more cellular phones—making a total of seven found in the apartment—and a title to a vehicle owned by petitioner. Cash in the amount of $900 was also found.

A fourth officer testified that the total weight of the drugs unveiled in the search was 448.4 grams of powder cocaine and 147.6 grams of crack cocaine, which had an estimated street value of $66,000 to $67,000. Also offered was testimony that

4

a map prepared of the area surrounding the apartment revealed that the residence was approximately 550 feet from the property line of the local high school. A forensic scientist with the TBI testified that his analysis showed that the substance in the Mason jar was cocaine, that he had weighed the drugs, that the rocks and the cookies, which contained cocaine base, weighed 68.8 grams, that the plastic bags contained cocaine, which weighed 208.47 grams, and that other items seized from the apartment contained an additional 72.6 grams of cocaine-base and 239.8 grams of cocaine.

The final prosecution witness was Charles Miller, who stated that, in April of 2002, he had driven from Ohio to Texas with petitioner and a man named Antonio Howell to buy a kilogram of cocaine for $16,000; that the purchase was petitioner's idea; that petitioner handled the payment, though both he and petitioner had contributed the purchase money; that, a few days after the drug transaction was finished, he and petitioner flew to Ohio, while Mr. Howell took the drugs to Ohio by car; that a short time later, he, his girlfriend, and petitioner returned to the Kingsport apartment; and that Mr. Howell drove separately with the drugs. Mr. Miller further stated that, the next day, a man showed up to "cook" the cocaine, which did not cook properly, and that they were arrested on the day on which they had intended to leave for Texas to return the cocaine to the dealer.

Continuing his testimony, Mr. Miller stated that petitioner knew that there was cocaine in the apartment, that neither of them used drugs, that they anticipated that they would realize approximately $30,000 from selling the cocaine in Kingsport, that he, petitioner, and Mr. Howell owned and used the cell phones to make drug deals, and that they bought the Mason jars for the purpose of cooking the cocaine.

## III. Discussion

A. Petitioner's Motion to Abate

In his motion, petitioner seeks to have his case stayed under the authority of *Rhines v. Weber*, 544 U.S. 269 (2005), to enable him to return to state courts to exhaust certain claims. As indicated by a court order attached to his motion, petitioner, acting *pro se*, filed a petition a writ of error *corum nobis* order in the Criminal Court for Sullivan County, Tennessee on October 24, 2007 (some ten weeks after filing this habeas petition), claiming that he was in possession of newly-discovered evidence concerning the confidential informant who had supplied information to obtain a search warrant for the apartment where petitioner was arrested.

As a precondition to habeas corpus relief, a petitioner must demonstrate that he has exhausted all available state court remedies, or that there is an absence of

6

state corrective process, or that resort to those remedies would be futile. 28 U.S.C. § 2254(b)(1). A federal district court must dismiss a mixed habeas petition–one which contains both exhausted and unexhausted claims.[2] *Pliler v. Ford*, 124 S.Ct. 2441, 2445 (2004) (citing *Rose v. Lundy*, 455 U.S. 509, 510 (1982)).

Under *Rhines*, a federal court is authorized to stay and abate a "mixed" habeas corpus petition filed close to the one-year statute of limitations in 28 U.S.C. § 2244(d), but only if a petitioner shows good cause for failing to exhaust his claim in the state courts. *Id*., at 277. A petitioner must also demonstrate that his claims are not meritless and that he has not intentionally engaged in dilatory tactics. *Ibid*.

Though petitioner offered his search-warrant claim to the state appellate court on direct appeal, *see Harris*, 2005 WL 419082, at *6-*7, the Court has examined the claims offered in the § 2254 petition and none of them involve this issue. Indeed, because the *corum nobis* claims are not included in the federal petition and because the federal petition contains no claims which have not been exhausted, this pleading cannot be described as "mixed." Absent a "mixed" petition, there is nothing to abate. Even if this pleading contained his *corum nobis* claims, petitioner has not shown good cause for his failure to exhaust those claims in state courts nor has he met the other *Rhines* requirements.

---

[2] Unexhausted claims are those claims of constitutional error which may still be presented to state courts for disposition.

7

Moreover, issues concerning a search warrant are not cognizable on habeas review, where as here, a petitioner had a full and fair opportunity to raise the claims in state court. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976). Obviously petitioner had a full and fair chance to present the claims in state court, since the state appellate court actually adjudicated claims involving the search warrant and the search itself. *Harris*, 2005 WL 419082, at * 4 - *7.

For these reasons, petitioner does not qualify for a stay and abatement order and, therefore, his motion to hold his case in abeyance [Doc. 10] will be **DENIED**.

B.     Respondent's Motion to Dismiss

In the second motion, respondent seeks dismissal of all seven claims presented in the petition, arguing that one claim is barred from federal review since it was held to have been waived by the Tennessee Court of Criminal Appeals,[3] that the remaining claims were adjudicated in state courts, and that, under the deferential review standards for state court decisions in 28 U.S.C. § 2254, those claims do not warrant habeas corpus relief either. For ease of discussion, the claims have been divided into two categories, beginning with the single claim which allegedly was procedurally defaulted.

---

[3]    By asserting that petitioner has waived this claim, respondent is invoking the procedural default doctrine. That doctrine will be discussed when that particular claim is addressed.

1.  *Procedurally Defaulted Claim*  [Pet., Ground Two].

In this claim, petitioner asserts that he was denied due process of law and a fair trial because of prosecutorial misconduct and because of the arbitrary application of law by the state court.  More specifically, petitioner maintains that the prosecutor impermissibly argued that "[o]ur society has gotten too laxed [sic] in holding people responsible for their own actions" and that this constitutional error was compounded by the Tennessee Court of Criminal Appeals which arbitrarily applied the law of "plain error" when it examined the claim on direct appeal.

In addressing this claim on appeal, the state appellate court first observed that the record showed that petitioner had failed to object or move for a mistrial when the comments were made.  It then ruled that "[c]onsequently, he has waived consideration of this issue on appeal."  *Harris*, 2005 WL 419082, at *10.  The state court did not choose to apply the law of plain error in its review of the prosecutor's comments and, apparently, it is petitioner's true argument that, by *withholding* plain error review, the state court acted arbitrarily.

As observed earlier, the law has long been established that a state prisoner must exhaust his available state court remedies before petitioning a federal court for a writ of habeas corpus.  28 U.S.C. § 2254(b) (1).  Exhaustion requires that a petitioner fairly present his federal claim first to the state courts, in a procedural

context where a merits review is likely. *Castille v. Peoples,* 489 U.S. 346, 351 (1989). A petitioner who has failed in this regard and who is now barred by a state procedural rule from returning with his claim to those courts has met the technical requirements of exhaustion (i.e. there are no state remedies left to exhaust) and is deemed to have exhausted his state remedies, but to have done so by way of a procedural default. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). A petitioner who has actually presented his federal claim to the state courts, which have declined to address it due to his failure to meet a state procedural requirement, has committed a procedural default as well. *See, e.g., Wainwright v. Sykes*, 433 U.S. 72 (1986) (failure to object to the admission of a confession at trial).

When a state invokes a procedural default defense, a court in the Sixth Circuit must apply a four-factor analysis to determine: 1) whether there is a procedural rule which applied to a petitioner's claim and whether a petitioner complied with the rule; 2) whether the procedural rule was actually enforced against a petitioner; 3) whether that rule is an adequate and independent state ground sufficient to block habeas review; and 4) whether a petitioner can demonstrate cause for his failure to comply with the rule and prejudice resulting from the alleged constitutional violation. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

In Tennessee, the failure to contemporaneously object to a prosecutor's allegedly improper comments waives appellate review, *see* Tenn. R. Crim. P. 36(a); *State v. Thornton*, 10 S.W. 3d 229, 234 (Tenn. Crim. App. 1999), though, under some circumstances, state appellate courts may notice plain error. Tenn. R. Crim. P. 52(b); *State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000). Tennessee's procedural rule for preserving prosecutorial-misconduct issues has been found to be an independent and adequate state ground, which, absent a showing of cause and prejudice, will bar federal review. *Gravely v. Mills,* 87 Fed. 3d 779, 785 (6th Cir. 1996).

The Court concludes that the state court's finding of waiver constitutes a procedural default. Petitioner offers no cause or prejudice to overcome the default and, thus, federal review cannot be had. Finally, whether or not a state court chooses to apply plain-error review is a matter of state law and not one justiciable in a federal habeas court. *Cooey v. Coyle*, 289 F.3d 882, 905 (6th Cir. 2002).

2. *Adjudicated Claims* [Pet., Grounds One, Three, Four, Five, Six, and Seven].

The standard which controls the review of adjudicated claims is found in 28 U.S.C. 2254(d). Under this standard, a district court may not grant a writ of habeas corpus for any claim adjudicated on the merits in state court unless the adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court

of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

Also, a state court's findings of fact are presumed to be accurate and a petitioner bears the burden of rebutting the presumption by clear and convincing evidence. *Spisak v. Mitchell*, 465 F.3d 684, 691 (6th Cir. 2006) (citing 28 U.S.C. § 2254(e)(1)). The presumption of correctness applies not only to express findings of fact, but also to unarticulated findings that are necessary to the state court's conclusions of mixed questions of fact and law. *See Marshall v. Lonberger,* 459 U.S. 422, 433 (1983) (presumption applies to a credibility determination which was implicit in rejection of defendant's claim). Given two permissible views of the evidence, a fact finder's choice between them cannot be clearly erroneous. *Amadeo v. Zant,* 486 U.S. 214, 226 (1988).

This standard applies to the six remaining claims advanced in the petition.

a) *Insufficient Evidence.*

Petitioner claims that the proof was not sufficient to convict him of a criminal conspiracy to sell or deliver more than 300 grams of cocaine and of possession of more than 300 grams of cocaine for resale within 1,000 feet of a school.

12

He suggests that there was no corroboration from an accomplice or other proof to support the conspiracy theory and that, as to the possession theory, there was no actual or constructive possession of the cocaine since the apartment did not belong to him and since no drugs were found in his possession or in close proximity to him.

The rule to be employed in assessing a claim of insufficient evidence is contained in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Gall v. Parker,* 231 F.3rd 265, 287-88 (6th Cir. 2000). *Jackson* holds that evidence, when viewed in the light most favorable to the prosecution, is sufficient if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. A petitioner challenging the sufficiency of the convicting evidence bears "a very heavy burden" in proving his claim. *United States v. Tocco*, 200 F.3d 401, 424 (6th Cir. 2000).

When this issue was raised on appeal, the Tennessee Court of Criminal Appeals referred to the *Jackson* standard and to the applicable state drug laws and then summarized the proof adduced at trial. The state trial record included Mr. Miller's testimony that buying the cocaine was petitioner's idea; that he and Mr. Miller invested money in the purchase, traveled to Texas together, along with Mr. Howell [in a separate car], and bought a kilogram of powder cocaine; and that they expected to earn about $30,000 from cooking and selling the cocaine. Nor was

petitioner less culpable based on the mere fact that no drugs were found on or nearby him or that the apartment was not leased or controlled by him, given his failure to cite to any reasons or authority to support his argument and the strength of Mr. Miller's testimony.

Other corroborating evidence included the airline ticket passes in his and Mr. Miller's name, his presence in the apartment, the large amount of cocaine found therein, the strong odor of "cooking" cocaine that wafted through the apartment, and the glass jars, microwave, scales, and baggies found in the apartment—items connected to drug dealing. Also, there was proof that the substance discovered in the apartment was cocaine, that it weighed more than 300 grams, that this quantity was sufficient to support the conclusion that the drugs were intended for sale and not for personal use, and that the drugs were located within 1,000 feet of a school. Ultimately, the state court decided that the convicting evidence was sufficient for the jury to have found beyond a reasonable doubt that the defendant possessed the cocaine and engaged in the cocaine conspiracy.

At the time of the crimes, to convict petitioner of conspiracy, the state had to prove that two or more persons, each having the culpable mental state required for the offense which is the object of the conspiracy and each acting to promote or facilitate commission of the offense, agree that one or more of them will engage in

14

conduct constituting that offense. *See* Tenn. Code Ann. § 39-12-103(a). To convict petitioner of the cocaine possession offense, there had to be proof that he (1) knowingly possessed cocaine within 1000 feet of real property that comprised a public or private school, (2) with the intent to resell, and (3) the amount of the cocaine possessed exceeded 300 grams. *See* Tenn. Code Ann. § 39-17-417(j)(5) - 432(b). Tennessee defines "possession" as either actual or constructive possession, with the latter defined as knowingly having the power and intention at a given time to exercise, either directly or through others, dominion and control over an object. *Harris*, 2005 WL 419082, at *8.

The jury heard and saw evidence showing that petitioner, Mr. Miller, and Mr. Howell traveled from Ohio to Texas to buy cocaine and that they transported a kilogram of powder cocaine to Kingsport to sell, after converting it to crack. This proof was sufficient to convince a rational juror that petitioner had agreed with one or more persons who shared criminal intent to engage in cocaine trafficking the crime and that at least one overt act in furtherance of the conspiracy had occurred.

The jury also heard evidence from an expert cartographer who had created a map showing that the distance from the apartment to the boundary line of Dobyns-Bennett High School was 550 feet; testimony from Mr. Miller concerning the cocaine-buying trip to Texas and the anticipated return on the money he and petitioner

had invested; and proof from a forensic scientist that the cocaine weighed in excess of 300 grams. This proof evinces that petitioner knowingly possessed more than 300 grams of cocaine for resale within 1,000 feet of a school.

In view of all the proof in the record indicating that petitioner had engaged in the cocaine conspiracy and possessed, with the requisite state of mind, over 300 grams of cocaine within 1,000 feet of the property line of a public school, the state court's resolution of this claim was not an unreasonable application of the *Jackson* standard nor based on an unreasonable determination of the facts. Since petitioner's claim of insufficiency of the evidence does not pass either of § 2254(d)'s tests, it will be dismissed.

b) *Jury Unanimity/ Election of Offenses*.

Petitioner maintains that he was denied his Sixth Amendment jury trial right and his right to a fair trial due to the lack of jury unanimity as to the charges because they were based on two separate offenses. He points out that, when the state charges one offense but produces evidence of multiple offenses, the doctrine of election requires the state to elect the particular offense for which it seeks a conviction. *See Harris*, 2005 WL 419082, * 10 (citing *State v. Brown*, 992 S.W. 3d 628, 631 (Tenn. 1999)).

16

On appeal, petitioner claimed that the conspiracy count of the indictment[4] was duplicitous because it charged both "sale" and "delivery" of cocaine, that the trial court should have required the state to elect between sale and delivery, and that its failure to do so resulted in a verdict that was non-unanimous because the verdict was based on two offenses.

In addressing this issue, the state court observed that the "election requirement safeguards the defendant's state constitutional right to a unanimous jury verdict by ensuring that jurors deliberate and render a verdict based on the same offense and set of facts." The operative phrase here is "safeguard the defendant's *state* constitutional right." To the extent that petitioner is asserting that the *United States* Constitution imposes a jury unanimity requirement in non-capital state criminal cases, such as his, there is no such a requirement. *See Johnson v. Louisiana*, 206 U.S. 356 (1972). *See also Schad v. Arizona*, 501 U.S. 624, 630-31 (1991) (plurality opinion) (declining to hold that either the Sixth, Eighth, or Fourteenth Amendment require a unanimous jury in state capital cases). Therefore, because the claim does not raise an issue under the Constitution, it is not a cognizable habeas corpus claim. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (finding that federal habeas corpus

---

[4] The charging instrument was actually a presentment [Addendum No. 1], but since both petitioner's appellate brief and the state appellate court's opinion refer to it as an indictment, this Court will do the same.

17

relief does not lie for errors of state law that do not rise to the level of a constitutional violation.)

However, to the extent that petitioner is asserting that two separate offenses were charged in Count One of his indictment, federal law establishes that a charging instrument which alleges two separate offenses in one count is duplicitous, *United States v. Washington*, 127 F.3d 510, 513 (6th Cir. 1997), and may violate an accused's right to notice of the charges against him and to double jeopardy protections. *Cole v. Arkansas*, 333 U.S. 196, 201 (1948); *Watson v. Jago*, 558 F.2d 330, 338-39 (6th Cir. 1977).

When this issue was offered during petitioner's direct review, the state appellate court recited verbatim Count One in the indictment and determined that, in fact, it did not charge two separate offenses. The Court of Criminal Appeals observed that criminal conspiracy, which was charged in Count One, is but a single offense, and that, while one may conspire to commit several offenses, one is guilty of only one conspiracy, so long as the multiple offenses are the object of the same agreement or continuous conspiratorial relationship. It further determined that the state did not and was not required to prove the substantive offenses of "sale" or "delivery." The state court denied relief, though it did not cite to the governing principles in Supreme Court cases in its opinion.

Nonetheless, this Court will defer to the state court decision so long as neither the reasoning or result of the state court decision contradicts the relevant legal principle in Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). Based on its review of the record, the state court found that Count one in the indictment did not allege two offenses. A presumption of correctness attaches to the factual findings made by a state court, unless rebutted by clear and convincing evidence offered by petitioner. 28 U.S.C. § 2254(e)(1). Because an indictment which does not allege two offenses in the same count is not duplicitous and because the record shows that, in fact, only one conspiracy was charged in Count One, neither the state court's reasoning nor the results of its reasoning is contrary to the relevant legal principles in Supreme Court cases.

c) *Brady Violation*. [Map]

In this claim, petitioner asserts that he was denied his Fourteenth Amendment right to due process of law and a fair trial due to the prosecution's failure to timely provide discovery of a map. The map was used to establish that the offense was committed within 1,000 feet of a public high school, an element of the cocaine-possession offense. *See* Tenn. Code Ann. § 39-17-417(j)(5) - 432(b). Petitioner alleges that belated disclosure of this evidence prevented him from showing that the

charged acts did not occur within a school zone and, thereby, avoid the cocaine-possession conviction by negating the "school zone" element.

When this claim was presented on direct review, petitioner alleged in the heading that his constitutional rights were violated by the disclosure of certain charts the morning of the trial. In the text of the brief under this argument, he cited only to a rule of state criminal procedure and state case law interpreting the rule and focused his argument strictly on state law. A state law issue does not implicate the Constitution since where and when state rules of procedure apply are matters for the state courts to decide and not the federal courts. *McGuire*, 502 U.S. at 67-68. Thus, it appears that the claim is not cognizable in this federal arena.

Moreover, if it were recognizable as a federal claim, the state court addressed it in the context of state law—just as it had been argued. A federal claim must be fairly presented to the state courts, which requires that the state courts be offered the same claim urged upon the federal courts. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). Simply alleging that constitutional rights have been violated, while the supporting argument consists solely of assertions that state discovery rules have been breached is not the same claim raised here, does not alert a state court to the federal

nature of the claim, and does not fairly present it.[5] *Duncan v. Henry*, 513 U.S. 364, 365-366 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution"); *Taylor v. Illinois*, 484 U.S. 400, 406 n. 9 (1988) ("A generic reference to the Fourteenth Amendment is not sufficient to preserve a constitutional claim based on an unidentified provision of the Bill of Rights").

But if the claim were fairly presented and adjudicated, petitioner would not be due habeas corpus relief. Though the state court did not cite to any federal law or Supreme Court cases, still it recognized that petitioner was asserting that his right to a fair trial was violated. Therefore, to the extent that the resolution of the claim also rests on federal law, this Court will review it as such. However, as before, unless the state court's reasoning or the result runs contrary to the pertinent rule in Supreme Court cases, the state court's opinion will not be disturbed. *Early*, 537 U.S. at 8.

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that the prosecution is required to turn over evidence in its possession that is both favorable

---

[5]    Petitioner did not fairly present his claim to the state courts since he did not rely upon either federal or state cases employing federal constitutional analysis; did not phrase his claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; and did not allege facts well within the mainstream of constitutional law. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (reciting this formula for determining whether a claim has been "fairly presented).

to the accused and material to guilt or punishment. Generally, however, *Brady* does not apply to the delayed disclosure of exculpatory evidence, but only to a complete failure to disclose it. *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002). Handing over evidence at trial only violates *Brady* if prejudice results due to the timing of the disclosure. *United States v. Bencs*, 28 F.3d 555, 560-61 (6th Cir. 1994).

In his brief to the state appellate court, petitioner alleged that he was "substantially prejudiced," but did not embellish this contention with any factual support or offer any developed argument. Thereafter, the state court found that he had not demonstrated how receiving the map on the day of trial had prejudiced him. Even in his federal pleading, petitioner makes a bare allegation that the tardy disclosure prevented him from establishing that the illegal acts did not occur within a school zone, but he does not allege, and there is nothing to show, that the charged conduct, in fact, did not take place within 1,000 feet of the property line of the Dobyns-Bennett High School. Absent something concrete to evince that prejudice resulted from the belated disclosure, neither the reasoning nor the results reached by the state court in adjudicating the issue is contrary to governing legal rule in Supreme Court cases. The writ will not issue with respect to this claim.

d) *Violation of the Right to a Jury.*

Petitioner alleges, in this claim, that he was denied due process and a fair sentence by the increase of his sentence beyond the statutory maximum based on findings not made by a jury. He acknowledges that his 25-year sentences were decreased to 24-year terms based on the ruling in *Blakely v. Washington*, 542 U.S. 296 (2004). He insists, however, that *Blakely* requires a further reduction to a 15-year sentence—the minimum within his sentencing range.

The Tennessee Court of Criminal Appeals, presented with this claim on direct review, held that, under *Blakely*, the application of the enhancement factor for being a leader in the commission of an offense involving two or more criminal actors violated petitioner's right to have a jury determine all essential facts, except for prior convictions, necessary for imposition of the sentence. Petitioner did not claim in the state courts that his right to have a jury determine every fact which increased his sentence dictated that the 15-year minimum term in his sentencing range be imposed. This constitutes a procedural default for which no cause and prejudice has been shown, or even alleged.

Moreover, even if preserved for federal review, the claim entitles petitioner to no relief. In deciding another issue[ i.e., whether petitioner should be required, as set forth in the school-zone statute, to serve the 15-year minimum sentence, regardless of any parole or other sentencing credits], the state court indicated

23

that, under the state sentencing law then in effect, "[t]he presumptive sentence to be imposed is the midpoint of the range...if there are no enhancement or mitigating factors."

Under *Blakely*, the midpoint of the sentencing range—not the minimum term—is the relevant statutory maximum. *See Cunningham v. California,* 127 S.Ct. 856, 866 (2007)(where state sentencing law required imposition of a middle term, absent aggravating or mitigating circumstances, the middle term is the relevant statutory maximum, in accord with *Blakely)*. Thus, petitioner's assertion to the contrary, which has been rejected by the Supreme Court, warrants no relief.

e) *Brady Violation.* [Witness's Criminal History]

In his *pro se* post-conviction application in the state court, petitioner alleged that, in violation of *Brady*, the prosecution withheld evidence of prior criminal convictions, future criminal charges/conviction, and fugitive-from-justice warrants for Mr. Miller, the state's key witness. Petitioner maintained that, without this evidence, he was unable to effectively impeach this witness.

When the claim was raised in his post-conviction appeal, the Tennessee Court of Criminal Appeals, citing to state law, found that the prosecution had no duty to turn over information concerning prior records of a witness during pretrial discovery. However, the state appeals court's task was to determine the correctness

24

of the lower court's finding that the petitioner had not alleged a colorable claim in his post-conviction pleading and, in order to perform that task, the state appellate court was required to make an ancillary determination regarding the merits of all the claims raised in the petition, including the *Brady* claim. Therefore, it is doubtful that the state court ever reached a conclusion on the *Brady* claim as a stand-alone claim.

But if it did, no relief can be granted unless the reasoning and the results run counter to *Brady* or to well-established principles of law contained in Supreme Court cases. *See Early*, 537 U.S. at 8. Thus, the state court's ruling must not be upset unless an independent review of the record and the relevant principle in the *Brady* family of Supreme Court cases persuades this Court that the ruling contravenes or unreasonably applies that principle or results from an unreasonable factual determination in light of the evidence offered to the state court. *Williams v. Anderson*, 460 F.3d 789 (6th Cir. 2006).

The Sixth Circuit has held that sentencing documents are impeachment material which "qualify[] as evidence of [a witness's] prior convictions" and are subject to disclosure. *Bell v. Bell*, 512 F.3d 223, 233 (6th Cir. 2008). At the same time, however, it has accepted the arguments that sentencing records are publicly available, that a Tennessee defendant can obtain access to them, and that no *Brady* violation occurs when those records are withheld. *Id.* at 336 (citing to *Matthews v.*

*Ishee*, 486 F.3d 883, 891 (6th Cir.2007) and *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) for the rule that *Brady* is not violated where information is available to the defense from another source).[6]  Nor is *Brady* infringed by withholding from a defendant a notice of an insanity defense filed in a witness's separate and unrelated criminal case because the evidence is not impeaching and because it is publicly available.  *Johnson V. Bell*, 525 F.3d 466, 477 and n. 8 (6th Cir. 2008).

However, while decisions of lower federal are instructive as to whether a legal principle had been clearly established in Supreme Court cases, *Smith V. Stegall*, 385 F.3d 993, 998 (6th Cir. 2004), a habeas court must look only to the holdings,  and not the dicta, of Supreme Court decisions as of the time of the relevant state court decision to determine the substance and the parameters of the legal principle.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

To prevail on a *Brady* claim, petitioner must show the evidence was: 1) favorable; 2) suppressed by the prosecution; and 3) material because prejudice ensued.  *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  In *United States v. Agurs*, 427 U.S. 97 (1976), the Supreme Court held that a prosecutor's failure to disclose a murder victim's criminal record, under the circumstances of that case, did not violate *Brady*.

---

[6]  The "reasonably available from public records" finding  actually involved whether a petitioner could show cause for a procedural default.  However, the cause component of the cause-and-prejudice analysis overlaps the second element of a *Brady* claim, i.e., whether evidence was suppressed by the prosecution.

Withholding the results of polygraph tests administered to two key government witnesses also does not amount to a *Brady* violation. *Wood v. Bartholomew*, 516 U.S. 1 (1995). However, *Brady* is violated by the non-disclosure of evidence of an agreement not to prosecute a key witness, *Giglio v. United States*, 405 U.S. 150 (1972), or of monetary payments to witnesses in return for their cooperation. *United States v. Bagley*, 473 U.S. 66i7 (1985).

The Court has not found, and petitioner does not cite to, any clearly established Supreme Court precedent which requires disclosure of the criminal history of a prosecution witness. Therefore, the state court's disposition of the claim does not contravene or unreasonably apply the governing rules in the *Brady* line of cases and did not result from an unreasonable factual determination. *See, e.g., Carroll v. Renico*, 475 F.3d 708, 713 (6th Cir. 2007) (holding that state court decision could not be upset under § 2254(d)'s standards because the Supreme Court had not decided the issue in question).

f) *Ineffective Assistance of Counsel on Appeal*.

Petitioner complains, in this claim, that his appellate attorney gave him ineffective assistance by failing to submit to the Court of Criminal Appeals a copy of the verdict forms and the trial court's ruling on the motion in limine to exclude the school zone chart.

As in petitioner's prior claim, the issue before the state appellate court was whether petitioner's post-conviction pleading contained a colorable claim, not whether counsel rendered ineffective assistance. However, in order to determine the issue presented, the state appeals court first had to evaluate the claims offered in the pleading, among which was this ineffective assistance claim. The state court did not cite to or apply the two-prong test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), which controls a charge of ineffective assistance of an appellate attorney. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (requiring a petitioner to show an objectively unreasonable performance and resulting prejudice to succeed on claim of ineffective assistance on appeal). Thus, it does not appear that the state court rendered a true merits decision on the claim in ruling that the claim was not colorable. But if it did, the state court's finding that petitioner "failed to state a factual basis as to how the exclusion of the school chart/map or the verdict forms prejudiced him in appellate review" is a finding of fact which, absent clear and convincing evidence, must be presumed correct. No such evidence has been offered.

As noted, under *Strickland*, petitioner must identify how his attorney's performance fell below professional norms and show that the deficiency of performance resulted in prejudice. The state court record reflects that the post-conviction petition contains bald allegations that the omission of these items "affected"

the state appellate court's ruling but is missing any assertions of fact explaining how the sub-standard performance resulted in prejudice to his defense. And, it is worth mentioning that the state post-conviction court took judicial notice of the verdict forms in considering this claim. [Addendum No. 13, Order of Judge R. Jerry Beck, entered Feb. 9, 2006].

Because the state court's rejection of this claim—if, in fact, the claim *was* rejected on its merits—does not contravene or unreasonably apply *Strickland* and does not stem from an unreasonable factual determination, petitioner cannot be granted relief on this claim either.

## IV. **Conclusion**

Accordingly, respondent's motion to dismiss will be **GRANTED** [Doc. 7], and this petition will be **DISMISSED**.

## V. **Certificate of Appealability**

Finally, the Court must decide whether to issue a certificate of appealability (COA). Petitioner qualifies for issuance of a COA if he has made a substantial showing of the denial of a constitutional right; he makes such a showing by demonstrating that reasonable jurists might question the correctness of the Court's procedural rulings or its assessment of his constitutional claims. *See Slack v. McDaniel,* 529 U.S. 473 (2000). The Court has found that some claims were

procedurally defaulted, while others are not cognizable. The Court also has concluded that the rest of the claims were adjudicated in state court and would not support habeas corpus relief because, after an examination of the state court decisions, the record, and the relevant governing law in Supreme Court cases, those decisions did not run contrary to well established federal law, did not reflect that the state courts had unreasonably applied that law, and did not demonstrate that the state courts had disposed of those claims by unreasonably determining the facts before those courts.

The Court now finds that reasonable jurists could not disagree with the resolution of these claims and could not conclude that they "are adequate to deserve encouragement proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003), and will **DENY** issuance of a COA. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

A separate order will enter.


**ENTER**:


                                        s/J. RONNIE GREER
                                        UNITED STATES DISTRICT JUDGE